**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | : | |
|---|---|---|
| EUGENE WILDER | : | |
| | : | |
| v. | : | Civil No. CCB-11-1019 |
| | : | |
| TALBOT COUNTY, MARYLAND | : | |
| | : | |
| | : | |

## **MEMORANDUM**

Plaintiff Eugene Wilder filed suit under the Family and Medical Leave Act ("FMLA" or "the Act"), 26 U.S.C. §§ 2601–2654, against his former employer, Talbot County, Maryland ("the County"). Mr. Wilder asserts claims for denial of a statutory entitlement to reinstatement following leave and for retaliatory discharge. The County has moved for summary judgment, Mr. Wilder has filed a response, and the County has filed a reply. No hearing is necessary. *See* Local Rule 105.6. For the following reasons, the County's motion for summary judgment will be granted.

Mr. Wilder worked as a Golf Cart Mechanic for Hog Neck Golf Course ("the Golf Course") from 1983 until 2009. (Wilder Dep. 9, ECF No. 15-2.) At the Golf Course, which is owned by Talbot County, Mr. Wilder's primary responsibility was to take care of the fleet of seventy-eight golf carts. (*Id.* at 14.) His duties included recharging and replacing the carts' batteries and repairing flat tires as needed. (*Id.* at 14–15, 21–22.) The batteries weighed forty to fifty pounds and required replacing approximately once every five years. (*Id.* at 14–16.) Mr. Wilder also was required to clean the bathrooms and perform grounds maintenance, such as weeding flower beds and washing windows. (*Id.* at 16–17, 22.) The duties are described in the Golf Cart Mechanic job description. (ECF No. 15-4.)

In January 2009, Mr. Wilder returned from a one month vacation and was unable to work because of chronic pain in his knees. (Wilder Dep. 34.) The County advised him that he could use leave under the FMLA to address his physical condition. (*Id.* at 32.) On February 12, 2009, Mr. Wilder requested and was immediately granted twelve weeks of leave pursuant to the FMLA, with a retroactive starting date of February 2, 2009. (ECF Nos. 15-5 & 15-6.) Mr. Wilder's twelve-week leave therefore expired on April 27, 2009.

On March 23, 2009, Mr. Wilder underwent knee replacement surgery. On April 17, 2009, Mr. Wilder's physician issued a note releasing Mr. Wilder "to return to work on 5/4/09, but advised no kneeling, no ladder climbing, no lifting greater than 25 pounds, over the next 4 weeks." (Physician Letter, ECF No. 15-7.) Mr. Wilder presented a copy of the note to the County. (Wilder Dep. 40.) In the last week of April, Mr. Wilder met with his supervisor, James Urbanczyk, who informed him that the County would not reinstate him on May 4, 2009. Mr. Urbanczyk made the decision "out of concern for [Mr. Wilder's] well being, in light of his recent surgery, and because he was not at that time capable of performing the essential functions of the Golf Cart Mechanic position, as he had not been released by his physician to return in his full capacity until June 1, 2009." (Urbanczyk Aff. ¶ 10, ECF No. 15-10.) Mr. Urbanczyk gave Mr. Wilder, who was seventy-one years old at the time, the option of retirement in lieu of termination. (Compl. ¶12, ECF No. 1; Mot. for Summ. J. 2, ECF No. 15-1.) Mr. Wilder retired effective July 1, 2009, and the County threw him a retirement party. (Wilder Dep. 48–49.)

On April 18, 2011, nearly two years after his retirement, Mr. Wilder filed the complaint in this case. Mr. Wilder asserted that the limitations imposed by his doctor after his FMLA leave "did not affect [his] ability to perform his job duties." (Compl. ¶ 11.) Therefore, he argued, the County

2

had improperly denied him his right under the FMLA to return to work in the same or equivalent position as when his leave commenced. He also alleged that his effective termination was in retaliation for his having engaged in the protected activity of requesting leave under the FMLA. The complaint requested an award of lost wages and an injunction compelling reinstatement.

On December 15, 2011, the County moved for summary judgment under Federal Rule of Civil Procedure 56(c), which provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)). Even viewed in the light most favorable to Mr. Wilder, however, the facts of this case leave no genuine dispute of material fact as

to either of his two claims.

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). After the protected period of leave, an eligible employee is entitled to "restoration to the position held when the leave commenced or to an equivalent position." *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 515 (D. Md. 2008) (citing 29 U.S.C. § 2614(a)(1)(A)–(B)). Where an eligible employee had been denied FMLA benefits to which she was entitled, she may bring a claim under the Act for "unlawful interference with an entitlement to FMLA benefits." *Id.* at 516 (citing 29 U.S.C. § 2615(a)(1)).

The entitlement to FMLA leave, however, is "limited to a total of 12 workweeks of leave during any 12-month period[.]" 29 C.F.R. § 825.200. And "an employee returning from FMLA leave has no right to restoration to her prior or an equivalent position where the person is 'unable to perform an essential function of the position because of . . . the continuation of a serious health condition.'" *Rodriguez*, 545 F. Supp. 2d at 523 (quoting 29 C.F.R. § 825.214(b)). Mr. Wilder thus has a right to reinstatement only if he was able to perform the essential functions of the Golf Cart Mechanic on April 27, 2009, when his FMLA leave expired. The County contends he was not, and the court is constrained to agree.

As an initial matter, Mr. Wilder was not cleared to return to work until May 4, 2009, a week after he needed to have been back at work to take advantage of the right to return under the FMLA. Thus, even if Mr. Wilder were able to perform the essential functions of his job by May 4, 2009, the County would not necessarily have violated the FMLA by effectively terminating his employment

4

prior to that date.  Mr. Wilder does not dispute that the twelve-week period of his FMLA leave ended on April 27, 2009; he does not dispute that his doctor did not clear him to return to work by that date; and, he does not expressly state that he would have been able to return to work on time. This alone is sufficient, under the FMLA, to justify the County's action.  *See Holmes v. E.Spire Communications, Inc.*, 135 F. Supp. 2d 657, 667 (D. Md. 2001) (finding plaintiff's inability to return to work upon expiration of twelve-weeks of FMLA leave to be dispositive in granting employer's motion for summary judgment on the issue).

Moreover, there is no genuine dispute that the physician-imposed restrictions on lifting meant that Mr. Wilder was unable to perform an essential function of his position even after his proposed May 4, 2009, return date.  Mr. Wilder's physician specifically advised Mr. Wilder that for four weeks following his return to work he should not lift more than twenty-five pounds.[1]  Mr. Wilder admits that the golf cart batteries weighed forty to fifty pounds and that his job duties included replacing the batteries in the nearly eighty golf carts at the club.  Nonetheless, he argues, a golf cart battery needs to be replaced only once every five years, so "it is entirely possible the golf cart batteries would not need to be changed during the four weeks in which Mr. Wilder could not lift more than twenty-five pounds."  (Pl.'s Resp. to Mot. for Summ. J. 5, ECF No. 16-1.)  That a physical ability *might* not be needed, however, does not necessarily render it non-essential.  As the County notes, employers have a legitimate need for employees who have the physical capacity to safely carry out the activities that they may be confronted with on the job, even if it is not a certainty

---

[1] Mr. Wilder argues that his physician's note should not be considered evidence that he could not perform essential functions of the job because his physician was not provided ahead of time with a list of the essential functions as suggested by 29 C.F.R. § 825.123.  Section 825.123 does not, however, require employers to provide physicians with a statement of essential functions in order to give meaning to a physician's note.  Rather, it suggests only that an employer "has the option" to do so.  29 C.F.R. § 825.123(b) (emphasis added).

that the need will arise over a specified period of time.[2]

Mr. Wilder's arguments about other alleged essential functions, kneeling and climbing ladders, are similarly unconvincing. For example, Mr. Wilder testified that in his twenty-six years as a golf cart mechanic, he never once had to kneel on the floor to change a tire, instead changing tires while bending over or lying down on a piece of cardboard. (Wilder Dep. 51–52.) Like the County, the court cannot imagine "how one might reasonably get to a prone position without kneeling down." (Mot. for Summ. J. 15.)

In sum, the essential functions of the Golf Cart Mechanic position included significant physical activity that Mr. Wilder was precluded from safely performing for weeks subsequent to the end of his FMLA leave. For the reasons outlined above, Mr. Wilder's own testimony to the contrary is not sufficient to create a genuine dispute of material fact, and summary judgment is appropriate. This outcome is unfortunate for Mr. Wilder. It is possible that an earlier surgery date could have resulted in his recuperation with time to prepare to return to work sooner. And it may also be possible that the County could have made other sacrifices in order to cope with Mr. Wilder's limitations. The FMLA, however, does not require them to have done so.

It follows that Mr. Wilder's claim for retaliation also must fail. "In the Fourth Circuit, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973), applies to claims of retaliation. . . ." *Bosse v. Baltimore Cnty.*, 692 F. Supp. 2d 574, 588 (D.

---

[2] It may be that there is some threshold level below which an action is so unlikely that it cannot be found to be essential. *See, e.g., Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 492, 495 (8th Cir. 2002) (finding doctor-prohibited heavy lifting was not an essential function because the plaintiff had done such lifting only four or five times in his eighteen years of employment). Here, however, the County has provided sufficient evidence to demonstrate that replacing the batteries was an essential part of the mechanic job position. There were nearly eighty carts in use on the Golf Course, so even taking into consideration a five-year battery lifespan it would be reasonable to expect a steady stream of required replacements. In addition, the individual who followed Mr. Wilder as a mechanic testified that he did in fact end up replacing the batteries in five of the carts. (Plugge Dep. 11–12, ECF No. 17-1.)

Md. 2010) (citations omitted). "Under the *McDonnell Douglas* framework, once an employer has met its burden of producing a legitimate nondiscriminatory explanation for its decision, the plaintiff is afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination.'" *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 646 (4th Cir. 2002) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Here, the County has met its burden by proving Mr. Wilder could not perform the essential functions of the mechanic job and therefore there was a legitimate reason to terminate his employment. In response, Mr. Wilder has not offered any evidence showing this reason to be pretextual. He has raised no genuine issue of material fact as to the retaliatory intent of the County, and summary judgment on his retaliation claim also must be granted.

    A separate order follows.

<u>May 24, 2012</u>                                               /s/
Date                                                             Catherine C. Blake
                                                                    United States District Judge